**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAVID RICH**<br><br>                              Plaintiff,<br>        **v.**<br><br>**BRANDYWINE INSURANCE<br>ADVISORS, LLC, and BARRY ABRAMS**<br><br>                     Defendants, | |
| **TRIGEN INSURANCE SOLUTIONS,<br>INC., as successor in interest to<br>BRANDYWINE INSURANCE<br>ADVISORS, LLC,**<br><br>                     Third-Party Plaintiff,<br>        **v.**<br><br>**CENTRAL INSURANCE AGENCY, INC.**<br><br>              Third-Party Defendant. | **CIVIL ACTION**<br><br>**NO. 16-3965** |

**MEMORANDUM RE: CENTRAL INSURANCE AGENCY, INC.'S MOTION TO DISMISS
BRANDYWINE INSURANCE ADVISORS, LLC'S THIRD-PARTY COMPLAINT**

Baylson, J.                                                                    **March 9, 2017**

## I.    Introduction

This case involves a dispute over where blame lies for the purchase of an insurance

policy that failed to provide the coverage the plaintiff wanted.  Plaintiff David Rich ("Plaintiff")

brings this action against Brandywine Insurance Advisors[1] ("BIA") and Barry Abrams, an

insurance broker for BIA ("Abrams," and collectively, "Original Defendants").  Plaintiff's

Complaint (ECF 1, "Compl.") contains four Counts:

---

[1]      Trigen Insurance Solution, Inc. ("Trigen"), which is the parent company of BIA, joined
this action as successor-in-interest to BIA on November 23, 2016.  (ECF 27).  For purposes of
this memorandum, the Court will refer to both Trigen and BIA as BIA.

    (1) Breach of fiduciary duty;
    (2) Negligence;
    (3) Negligent Misrepresentation; and
    (4) Fraud.

(Compl. ¶¶ 89-152).

    On September 23, 2016, BIA filed a Third-Party Complaint ("T-P Compl.") against Central Insurance Agency, Inc. ("Central"), an insurance advisor with which BIA consulted, for contribution and indemnification.  On December 9, 2016, Central filed a Motion to Dismiss BIA's Third-Party Complaint pursuant to Federal Rules of Civil Procedure 14(a) and 12(b)(6), (ECF 29, "Central's Mot."), to which BIA filed an Opposition on January 11, 2017 (ECF 42, "BIA's Opp'n").

    For the following reasons, Central's Motion to dismiss BIA's Third-Party Complaint will be DENIED in part and GRANTED in part.

**II.**    **Factual Background**

    The following facts are taken from the Complaint and Third-Party Complaint, and are accepted as true for purposes of the pending motion.  See Fed. R. Civ. P. 12(b)(6); United States Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).  In the Spring of 2013, Plaintiff met Steven Peterson ("Peterson"), who was engaged in the business of providing "vaulting services" for ATMs in the New York City metropolitan area.  Vaulting services involve supplying and loading ATMs with various denominations of cash, which is then dispensed to customers who draw out money utilizing their bank cards.  (Compl. ¶¶ 10-14).

    In April 2013, Plaintiff decided to provide secured loans to Peterson's ATM vaulting business (the "Vaulting Loans").  (Id. ¶¶ 20-25).  According to Plaintiff, an "explicit precondition and term of the Vaulting Loans" was that their proceeds were to be used

exclusively as working capital—specifically, as vaulting cash—for Peterson's ATM vaulting business, and not for business expenses or other overhead.  (Id. ¶¶ 26-27).

In early 2014, Peterson requested additional loans from Plaintiff.  Plaintiff worried that Peterson could abscond with funds in the vaulting accounts, however, and wanted to protect his investment with insurance.  (Id. ¶¶ 30-32).  Before making further loans to Peterson, Plaintiff required that he obtain "proper business insurance," including, *inter alia*, "(i) employee theft and dishonesty coverage (to, among other things, cover theft and dishonesty by Peterson)[.]"  (Id. ¶ 33).  Accordingly, Peterson obtained the Original Defendants as insurance brokers to obtain the coverage Plaintiff requested.  (Id. ¶ 34).

Plaintiff made it clear to Original Defendants that he wanted an insurance policy that would protect his interest—i.e. make him the "loss payee or other form of beneficiary"—against theft and dishonesty by employees, including—specifically—Peterson.  (Id. ¶¶ 40-41).  The Original Defendants represented to Plaintiff that they could obtain a commercial insurance policy (the "Policy") which would name Plaintiff as the loss payee and would protect his interest against theft and dishonesty by employees, including Peterson.  (Id. ¶¶ 44-46).  In the Spring of 2014, in reliance on the Original Defendants' representations to Plaintiff, the ATM vaulting business obtained the Policy.  (Id. ¶ 47).  Despite Plaintiff's instructions, however, the Policy did not include Plaintiff as a loss payee, an insured, or other form of beneficiary.  (Id. ¶ 48).

Thereafter, the Original Defendants, both orally and in writing, repeatedly assured Plaintiff that the Policy protected and insured him against theft or dishonesty by Peterson.  (Id. ¶¶ 50-53).  Because of those assurances, in July 2014, Plaintiff requested, through the Original Defendants, that the Policy coverage for employee theft and dishonesty be raised to $2,250,000, which it was.  (Id. ¶¶ 54-55).  Plaintiff also made additional loans and advances to Peterson's

ATM vaulting business in reliance upon the Original Defendants' representations.  (Id. ¶ 56).
Plaintiff was not officially added as a loss payee of the Policy, however, until December 2014.
(Id. ¶ 58).

In November 2014, Peterson admitted to Plaintiff that he had misappropriated about
$900,000 from the ATM vaulting business, of which $833,835 he could not return to the vaulting
funds (the "Theft").  (Id. ¶¶ 60, 65, 67).  Upon learning of the Theft, Plaintiff immediately
contacted the Original Defendants, who assured him that the losses to the ATM vaulting business
due to the Theft were covered by the Policy.  (Id. ¶¶ 61-63).

In June 2015, after an investigation and numerous discussions with the Original
Defendants, Plaintiff filed a claim as a loss payee under the Policy to recover for the Theft.  (Id. ¶
70).  His claim, however, was rejected because—contrary to the explicit representations and
assurances of the Original Defendants—the Policy did not cover losses resulting from theft or
dishonesty of Peterson because Peterson was an owner of the ATM vaulting business.
Unbeknownst to Plaintiff, the Policy expressly excepted from coverage any theft committed by
owners of the ATM vaulting business.  (Id. ¶¶ 71-72).

In June 2016, while preparing to bring the instant action, Plaintiff learned that, at all
relevant times, Abrams (1) had been convicted of felony insurance fraud and perjury in
Pennsylvania, and, (2) as a result of that conviction, had his insurance license revoked, such that
he was unlicensed while acting as an insurance broker and agent of BIA.  (Id. ¶¶ 78-80).

In the Third-Party Complaint against Central, BIA alleges that beginning early 2014,
"when endeavoring to find suitable commercial crime insurance coverage for the ATM vaulting
business, BIA consulted with [Central]" in exchange for the payment of a commission.  (T-P
Compl. ¶¶ 12, 15).  Stephen A. Ormsby ("Ormsby"), a representative of Central, "proposed the

Policy to BIA as being one which would meet the commercial crime insurance needs of the ATM [v]aulting [b]usiness," specifically that "any theft of monies from the ATM [v]autling [b]usiness by Peterson, the business' owner, would be covered under the Policy."  (Id. ¶¶ 13-14).  According to BIA, in reliance on Central's professional advice with respect to the scope of the coverage that the Policy provided, BIA recommended the Policy to the ATM vaulting business, which it purchased, effective June 5, 2014.  (Id. ¶ 16).  BIA alleges that, "[t]o the extent [Plaintiff] sustained any loss or damage for which BIA is determined to be liable, the loss or damage was proximately caused by the negligence and/or negligent misrepresentations of [Central], through which BIA procured the Policy for the ATM Vaulting Business."  (Id. ¶ 11).

## I.   Procedural History & Jurisdiction

Plaintiff filed his Complaint on July 22, 2014.  On September 9, 2016, BIA filed an Answer (ECF 9), which denied the allegations in the Complaint, and asserted forty-one affirmative defenses and certain cross-claims.  On September 23, 2016, BIA filed a Third-Party Complaint against Central.

On October 7, 2016, Abrams filed an Answer to Plaintiff's Complaint (ECF 17), which also denied the allegations in the Complaint, and asserted twenty-eight affirmative defenses and certain cross-claims.  That day, Abrams also filed an Answer to BIA's cross-claims.  (ECF 18).

On December 9, 2016, Central filed the instant Motion to Dismiss BIA's Third-Party Complaint, to which BIA filed an Opposition on January 11, 2017.

On December 21, 2016, the Court granted leave for the Original Defendants to jointly file a Third-Party Complaint against Peterson.  (ECF 39).

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff's citizenship (Pennsylvania) differs from that of each defendants' (New York), and the amount in controversy exceeds $75,000.

## II.    Discussion

### a.   When Third-Party Joinder is Proper Under F.R.C.P. 14(a)

The parties dispute whether Central was properly joined as a third-party defendant, pursuant to Rule 14(a).

As stated above, in this case, the Court exercises its diversity jurisdiction.  In a diversity case, while the nature of the interest sought to be enforced is determined by state substantive law (here, Pennsylvania) [2], see Erie R. R. Co. v. Tompkins, 304 U.S. 64 (1938), the issue of joinder is a matter of federal law.  See Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 105 (1968).  Thus, the Court applies the federal joinder standard in this action, which provides,

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.  But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer. [3]

Fed. R. Civ. Pro. 14(a)(1).

In determining whether a third-party complaint was properly brought under Rule 14, a court looks to whether the pleadings provide a basis for the third-party defendant's liability to the defendant/third-party plaintiff.  See Morris v. Lenihan, 192 F.R.D. 484, 488 (E.D. Pa. Jan. 10, 2000).  Rule 14, however, does not provide an independent legal basis for a third-party cause of

---

[2]    The parties do not dispute that Pennsylvania substantive law applies.

[3]    Original Defendants filed the Third-Party Complaint on September 23, 2016, which was within 14 days of their September 9, 2016 Answer.  (ECF 9, 16).

action; it merely provides the procedural mechanism for the assertion of such a claim under recognized substantive law.  Id.  A court must apply the governing substantive law (here, the law of Pennsylvania), to determine whether there is a substantive basis for defendants' third-party complaint.

In this case, the Third-Party Complaint asserts that "BIA is entitled to indemnity and/or contribution from [Central]."  (T-P Compl. ¶ 20).  Accordingly, the Court must look to the law of indemnity and contribution in Pennsylvania.

### i. Indemnification

Central moves to dismiss BIA's Third-Party Complaint on the basis that BIA has failed to state a claim for indemnification.  "Under Pennsylvania law, indemnity is available only from those who are primarily liable to those who are merely secondarily or vicariously liable."  In re One Meridian Plaza Fire Litigation, 820 F. Supp. 1492, 1496 (E.D. Pa. 1993).  "Indemnity, if applicable, would shift the entire liability for plaintiff's loss from a third-party plaintiff to third-party defendant."  Id.  Indemnification is a right "which enures to a person who, *without active fault on his own part*, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable."  TVSM Inc. v. Alexander & Alexander, Inc., 583 F. Supp. 1089, 1091 (E.D. Pa. 1984) (emphasis added) (citing Builders Supply Co. v. McCabe, 77 A.2d 368 (Pa. 1951)).  "Indemnity is a narrow form of relief extended in limited circumstances.  Liability will not be shifted simply because another party bears some fault."  Merrill Lynch, et al. v. Staiman, 771 F. Supp. 102, 105 (E.D. Pa. Aug. 15, 1991).

Here, BIA's Third-Party Complaint fails to state a claim for indemnification.  First, BIA has not alleged that it has any legal relationship with Central (e.g. employer/employee or principle/agent) whereby Central would be liable for the conduct of BIA.  See Morris v. Lenihan,

192 F.R.D. 484, 489 (E.D. Pa. May 2, 2000) (listing examples of relationships where indemnification is appropriate, and holding that "[n]othing in the instant third-party complaint indicates the existence of a relationship . . . that . . . would legally require the [third-party defendants] to pay damages for which [the original defendants] were liable.").

Additionally, indemnity is not available where, as here, the third-party plaintiff had some "active fault" in the damage done to the injured party.  <u>McCabe</u>, 77 A.2d at 370.  The relevant question, with respect to indemnity, is not who bears "primary responsibility," but rather "whether the party seeking indemnity . . . had any part in causing the injury." <u>Morris</u>, 192 F.R.D. at 489 (quoting <u>Sirianni v. Nugent Bros., Inc.</u>, 509 Pa. 564, 571 (1986)).  BIA alleges that it is entitled to indemnity from Central because BIA's advice to Plaintiff regarding the Policy was based on advice it, in turn, relied upon from Central, such that Central—not BIA— proximately caused Plaintiff's injury.  (T-P Compl. ¶¶ 18-20; BIA's Opp'n at 6-7).

However, accepting BIA's allegation of proximate causation as true, Plaintiff's Complaint still adequately alleges that BIA "had a[] part in causing [Plaintiff's] injury." <u>Morris</u>, 192 F.R.D. at 489.  For instance, BIA's reliance on Central's advice could have, in and of itself, constituted negligent conduct to Plaintiff, as could BIA's decision to allow Abrams, an unlicensed broker, to act as its agent in advising Plaintiff.  (<u>See</u>, <u>e.g.</u>, Compl. ¶¶ 49-50; Central's Mot. at 13-14); <u>Resolution Trust Corp. v. KPMG Peat Marwick</u>, No. 92-cv-1373, 1993 WL 211555, at *2 (E.D. Pa. Jun. 8, 1993) ("[Defendant] cannot qualify for indemnification" because "[defendant's] alleged conduct in failing to perform accounting services as set forth in the [plaintiff's] Complaint . . . constitutes active negligence.").

While BIA relies on <u>Herndon Borough Jackson Tp. Joint Mun. Authority v. Pentair Pump Group</u>, No. 12-cv-1116, 2015 WL 2166097 (M.D. Pa. May 8, 2015), this case is both easily

distinguishable and not binding on this Court.  There, Herndon Borough, which "moves wastewater through various pump stations," alleged that Pentair installed inferior parts in a water pump, which caused significant damage to Herndon Borough.  Pentair filed a third-party complaint against Larson Design Group, Inc., alleging that it was Larson's negligent misrepresentation of the design of the sewage plant—"and not any alleged defects in the pumps"—that caused the damage.  Id., at *1.  The court found that "a thorough reading of the Third Party Complaint evidences" an indemnity claim because "absent Larson's initial negligence, Pentair's equipment would have operated as expected, and no liability could have been imputed to Pentair."  Id., at *5.  Importantly, there, unlike here, the court concluded that Pentair "justifiably relied" on Larson's faulty information, meaning it was convinced that Pentair had no "active fault" in causing Herndon Borough's injury.  As explained above, the same cannot be said of BIA.

Accordingly, BIA has not stated a claim for indemnification, and Central's motion to dismiss will be granted with prejudice with respect to that claim.

## ii.  Contribution

Central also moves to dismiss BIA's Third-Party Complaint on the basis that BIA has failed to state a claim for contribution.  The Pennsylvania Uniform Contribution Among Tortfeasors Act (the "Uniform Act") provides a right for contribution among joint tortfeasors. 42 Pa. C.S.A. § 8324(a).  "Joint tortfeasors are defined as 'two or more persons jointly or severally liable in tort for the same injury to persons or property[.]'"  Mattia v. Sears, Roebuck & Co., 366 Pa. Super. 504, 507, 531 A.2d 789, 791 (1987) (quoting 42 Pa. C.S.A. § 8322).  "Two actors are jointly liable for an injury if their conduct causes a single harm which cannot be apportioned . . . even though [the actors] may have acted independently."  Id. (internal citations omitted).  As the Pennsylvania Superior Court explained in Svetz for Svetz v. Land Tool Co.,

"[i]t matters not on which theory a tortfeasor has been held responsible for the tort committed against the plaintiff.  So long as the party seeking contribution has paid in excess of his or her share of liability, it would be inequitable under the [Uniform] Act to deny that party's right to contribution from a second tortfeasor who also contributed to the plaintiff's injury."  355 Pa. Super. 230, 238, 513 A.2d 403, 407 (1986).  Accordingly, whether BIA has stated a claim for contribution against Central depends upon whether it has sufficiently alleged that Central committed a tort against Plaintiff such that Central and BIA were "joint tortfeasors."

Central argues that BIA has not stated a claim for contribution for two reasons.  First, it argues that BIA "cannot, as a matter of law, establish that Central owed [Plaintiff] a duty of care."  (Central's Mot. at 15).  Without owing a duty of care to Plaintiff, the argument follows, Central could not be a "joint tortfeasor" because it could not have committed a tort against him at all.  (Id.).  Second, Central argues that BIA is not entitled to contribution as a matter of law with respect to BIA's fiduciary duty and fraud claims, since those claims involve intentional torts, and parties are "not entitled to contribution with respect to intentional torts."  (Id.)

BIA counters that the Third-Party Complaint should not be dismissed because, under Pennsylvania law, "a professional who provides information to another, with knowledge that the information will be used and/or relied upon by third-parties, owes a duty of reasonable care to those third-parties," and "[Central] was well aware that its professional opinion about the scope of coverage provided under the Policy would be relied upon by BIA and, in turn, by the ATM Vaulting Business."  (BIA's Opp'n at 7).

BIA relies primarily on Bilt-Rite Contractors, Inc. v. The Architectural Studio, 581 Pa. 454, 866 A.2d 270 (2005), in support of its argument that it has adequately alleged that it is entitled to contribution from Central as a "joint tortfeasor."  There, the Supreme Court of

10

Pennsylvania considered, as a matter of first impression, "whether a building contractor [Bilt-Rite] may maintain a negligent misrepresentation claim against an architect [TAS] for alleged misrepresentations in the architect's plans for a public construction contract [for East Penn School District], where there was no privity of contract between [TAS] and [Bilt-Rite], but [Bilt-Rite] reasonably relied upon the misrepresentations in submitting its winning bid [to East Penn School District] and consequently suffered purely economic damages as a result of that reliance." Id. at 456.  In holding that it did, the court adopted Section 552 of the Restatement (2d) of Torts[4] "as the law in Pennsylvania in cases where information is negligently supplied by one in the business of supplying information, such as an architect or design professional, and where it is foreseeable that the information will be used and relied upon by third persons, even if the third parties have no direct contractual relationship with the supplier of information." Id. at 483.  It further clarified that "Section 522 imposes a duty of reasonable care upon the supplier of professional information for use by others," and "the absence of privity does not defeat a section 552 claim."

---

[4]        **§ 552 Information Negligently Supplied for the Guidance of Others**

> (1)  One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply
> the information or knows that the recipient intends to supply it; and
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

> (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Following Bilt-Rite, BIA is correct that, under Pennsylvania law, Central could be liable to Plaintiff for negligence or negligent misrepresentation despite the fact that Plaintiff and Central were not in privity (i.e., had no contractual relationship).  BIA's Third-Party Complaint adequately alleges that Central was "in the business of supplying information," and that it was "foreseeable that the information [Central provided to BIA] would be used and relied upon by [Plaintiff], even if [Plaintiff] ha[d] no direct contractual relationship with [Central]."  Bilt-Rite, 581 Pa. at 286; (see T-P Compl. ¶¶ 11-18).

Central's brief does not persuade the court otherwise.  Importantly, Central does not even cite Bilt-Rite, nor attempt to distinguish it.  Instead, Central relies on Gibbs v. Ernst, 538 Pa. 193, 210, 647 A.2d 882, 890 (1994), which stands for the broad proposition that "any action in negligence is premised on the existence of a duty owed by one party to another."  Gibbs does not hold that no such duty exists under the circumstances present in this case.  In fact, the Court in Gibbs, recognizing that "[a]n important element of duty is foreseeability," held that an adoption agency had a duty to disclose an adopted child's medical history to adopting parents given the "unique relationship between the adoption agency and the prospective parents."  Id.

Having concluded that BIA has adequately alleged that Central was a "joint tortfeasor" under a theory of negligent misrepresentation such that BIA may be entitled to contribution, the Court need not meaningfully engage with Central's second argument, that BIA is not, as a matter of law, entitled to contribution for its alleged intentional torts against Plaintiff.  Svetz, 355 Pa. Super. at 238 ("Contribution is available whenever two or more persons are jointly or severally liable in tort, irrespective of the theory by which tort liability is imposed.").  The Court notes, however, that Central mischaracterizes the law to the extent it argues that, under Pennsylvania law, "a party is not entitled to contribution with respect to intentional torts."  (Central's Mot. at

15).  See, e.g., Euro Motorcars Germantown Inc. v. Manheim Remarketing, Inc., No. 13-cv-7614, 2015 WL 798969, at *7-8 (E.D. Pa. Feb. 25, 2015) ("I conclude that Pennsylvania appellate courts would . . . hold that the contribution statute [the Uniform Act] permits a contribution remedy for intentional tortfeasors.'").

Accordingly, BIA has stated a claim for contribution, and Central's motion to dismiss will be denied with respect to that claim.

**III.   Conclusion**

For the reasons stated above, Central's Motion to Dismiss will be GRANTED as to BIA's indemnification claim, and DENIED as to BIA's contribution claim.

An appropriate Order follows.

O:\Jessica.2016\16-cv-3965, Rich v. Brandywine\Memo Re Motion to Dismiss Third Party Complaint.docx